## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of an Application to Enforce an Administrative Subpoena of the<br><br>**COMMODITY FUTURES TRADING COMMISSION,**<br><br>Applicant,<br><br>v.<br><br>**GLO-BULL WEALTH LLC, a Texas limited liability company, and ARIC COLBY GREEN, an individual,**<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      **Misc. Action No.** |

## MEMORANDUM IN SUPPORT OF
## APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER
## <u>REQUIRING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS</u>

Applicant, the Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, submits this Memorandum in Support of its Application for an Order to Show Cause and an Order Requiring Compliance with Administrative Subpoenas ("Application"), and states as follows:

### I.    <u>INTRODUCTION</u>[1]

The Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Commodity Exchange Act (the "Act" or "CEA"),

---

[1]    In support of this Application, the Commission has contemporaneously filed the Declaration of Kevin Samuel, a CFTC Division of Enforcement Futures Trading Investigator ("Samuel Declaration," cited as "Samuel Decl. ¶ ___"), and supporting exhibits; and the Declaration of Kelly M. Folks, a CFTC Division of Enforcement Trial Attorney, and supporting exhibits ("Folks Declaration," cited as "Folks Decl. ¶ ___").

7 U.S.C. §§ 1-26, and Commission Regulations promulgated thereunder ("Regulations"),
17 C.F.R. pts. 1-190 (2025).  On August 29, 2024, the Commission, through its Division of
Enforcement (the "Division") and pursuant to its statutory authority, issued a subpoena *duces tecum* to Respondent Glo-Bull Wealth LLC ("GBW"), a Texas limited liability company (the
"GBW Subpoena"), and served it upon Respondent Aric Colby Green ("Green").[2]  Folks Decl.
¶¶ 3-4, 10-12, 25; Samuel Decl. ¶¶ 15, 19-20 and Exhibit ("Ex.") 1 and Ex. 2 thereto.  Green is
GBW's owner, its Chief Executive Officer ("CEO"), and one of its managers.  Folks Decl. ¶ 9;
Samuel Decl. ¶ 13.   As such, Green was served with the GBW Subpoena and commanded to
produce the company's records.  Folks Decl. ¶¶ 9-14, 17; Samuel Decl. ¶¶ 19-22 and Exs. 1 and
2 thereto.[3]  Green never responded to the GBW Subpoena.  Folks Decl. ¶¶ 15-16; Samuel Decl. ¶
23.

On September 4, 2024, the Commission issued a subpoena *duces tecum* to Green
personally (the "September 4 Subpoena") and served it upon him.[4]  Folks Decl. ¶¶ 10, 13-15;
Samuel Decl. ¶¶ 24-27 and Exs. 3 and 4 thereto.  When Green did not respond to the September
4 Subpoena, the Commission re-issued it on October 16, 2024, and added an *ad testificandum*
clause requiring that Green appear for testimony (the "October 16 Subpoena," and together with

---

[2]    A copy of the GBW Subpoena is attached as Exhibit 1 to the Samuel Declaration.

[3]    The Division also served the GBW Subpoena on Christian Waldo ("Waldo"), another
GBW manager and its registered agent.  Samuel Decl. ¶¶ 13, 19-20 and Exs. 1 and 2 thereto;
Folks Decl. ¶¶ 9-11 and Ex. 1 thereto.   While Waldo produced some GBW documents, Green
has sole custody and control of the vast majority of GBW records and documents.  Folks Decl.
¶¶ 17, 26.

[4]    A copy of the September 4 Subpoena is attached as Exhibit 3 to the Samuel Declaration.

the GBW Subpoena and the September 4 Subpoena, the "Subpoenas").[5]  Folks Decl. ¶¶ 16-21;
Samual Decl. ¶¶ 28-30 and Exs. 5 and 6 thereto.

The Commission issued the Subpoenas in connection with an ongoing, non-public
investigation being conducted through the Division into whether GBW, or any of its officers,
agents or employees, including Green, violated the anti-fraud provisions of the CEA or
Regulations, *e.g.*, 7 U.S.C. §§ 6b(a) and 9(1), and 17 C.F.R. § 180.1, in connection with digital
assets.  Folks Decl. ¶¶ 3-9, 17, 27; Samual Decl. ¶¶ 7-19, 21, 26, 32. As demonstrated below,
although properly served with the Subpoenas, Green, on behalf of GBW, and himself personally,
without any justification, failed to comply with the Subpoenas.  Folks Decl. ¶¶ 10-26; Samual
Decl. ¶¶ 19-20, 23-31.  Indeed, he failed to produce a single responsive document, failed to
appear for testimony, and, other than one communication, failed to otherwise respond.  Folks
Decl. ¶¶ 16-25.  These failures were despite Green having been given ample notice and
extensions of time to respond, and despite Green having been warned that his continued failure
to comply with the Subpoenas could result in the filing of a subpoena enforcement action against
him in a United States Federal District Court.  *See*, *id*. ¶¶ 15, 21, 23-26, 28.

Accordingly, because Green on behalf of GBW and/or himself personally has failed to
comply in any way with the obligations imposed by the Subpoenas, and, since Green has cited no
reason for his non-compliance, the Commission's sole avenue for redress is to seek an order
from the Court requiring GBW and Green to show cause why they should not be compelled by
the Court to comply fully with the Subpoenas.  As explained below, the Court possesses subject
matter jurisdiction for subpoena enforcement, personal jurisdiction over GBW and Green, and is
the proper venue for this action.  (See Part II and Part V below.)  Further, the Subpoenas are well

---

[5]     A copy of the October 16 Subpoena is attached as Exhibit 5 to the Samuel Declaration.

within the Commission's statutory authority, and the documents and information demanded by the Subpoenas are sufficiently definite and seek reasonably relevant information.  (See Part VI below.)  Therefore, the Court should issue an order requiring GBW and Green to show cause why they should not be compelled to comply fully with the Subpoenas.

Should GBW and Green not show good cause, the Commission respectfully requests that the Court issue a subsequent order: (1) requiring GBW and Green to comply immediately in all respects with the Subpoenas, including (a) that they produce all books, papers, documents and other tangible things specified in Schedule A to each Subpoena to the Commission that are in their possession, custody and/or control, and (b) that Green personally appear before the Commission at its office in Washington, D.C., to provide testimony; and (2) providing any other relief the Court deems appropriate for their failure to show good cause.

## II.    JURISDICTION AND VENUE

The CEA, in broad terms, permits expansive service and enforcement of administrative subpoenas.  Because investigations concerning commodity futures trading involve exchanges, banks, and persons located and operating throughout the United States and abroad, the CEA grants the Commission nationwide and global authority to "administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records that the Commission deems relevant or material to the inquiry."  7 U.S.C. § 9(5); *see also*, *id.* § 9(6) ("The attendance of witnesses and the production of any such records may be required from any place in the United States, any State, or any foreign country or jurisdiction at any designated place of hearing.").

The Commission's authority to enforce its subpoenas is equally expansive:

> In case of contumacy by, or refusal to obey a subpoena issued to, any person, *the Commission may invoke the aid of any court of the United States within the jurisdiction in which the investigation or*

> *proceeding is conducted*, or where such person resides or transacts
> business, in requiring the attendance and testimony of witnesses
> and the production of books, papers, correspondence, memoranda,
> and other records.  Such court may issue an order requiring such
> person to appear before the Commission or . . . other officer
> designated by the Commission, there to produce records, if so
> ordered, or to give testimony touching the matter under
> investigation or in question.

7 U.S.C. § 9(8) (emphasis added).

Venue is proper in the U.S. District Court for the District of Columbia ("D.C.") since the

Commission's headquarters' office is located here, the attorneys and investigators working on

the instant investigation are assigned to the Commission's D.C. office, the Commission's

documents relating to the investigation are stored in the Commission's D.C. office, and the

Subpoenas were issued from, and are returnable to, the Commission's D.C. office.  Folks Decl.

¶¶ 1, 4-8, 10, 18; Samuel Decl. ¶¶ 1, 7-10, 15-20, 24-25, 28, 30 and Exs. 1, 3 and 5 thereto.[6]

Given the Commission's investigation into GBW's and Green's possible violations of the

Act and Regulations (see Part IV below), and given that Green, as CEO of GBW during all

relevant times, clearly has relevant information concerning GBW's possible violations of the Act

and Regulations (see Part IV below), 7 U.S.C. §§ 9(5) and (6) plainly authorize the Commission

to issue the Subpoenas to GBW and Green, to serve Green where he resides (in Texas), and

require production and testimony here in D.C.

Accordingly, this Court may issue an order enforcing the Subpoenas pursuant to 7 U.S.C.

§ 9(8) where, as here, it possesses subject matter jurisdiction for subpoena enforcement, personal

---

[6]     As discussed further below (Part V *infra*), 7 U.S.C. § 9(8) "both establishes where venue and personal jurisdiction are proper and serves as a specific grant of subject matter jurisdiction." Memorandum and Order, *In re: U.S. Commodity Futures Trading Comm'n* v. *Sullivan*, No. 15-mc-00032, Dkt. No. 8, at 2 (D.D.C. April 3, 2015) (Moss, J.), a copy of which is attached at Ex. A.   Thus, this provision, as interpreted by the cases cited below, provides this Court with the jurisdiction and venue necessary to enforce the Subpoenas against GBW and Green.

jurisdiction over the respondents, and venue properly lies. *See Nat'l Labor Relations Bd. v. Cooper Tire & Rubber Co.*, 438 F.3d 1198 (D.C. Cir. 2006); *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005); *Fed. Election Comm'n v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849 (D.C. Cir. 1979); *Fed. Trade Comm'n v. Browning*, 435 F.2d 96 (D.C. Cir. 1970); *see also Commodity Futures Trading Comm'n v. First State Depository Co., LLC*, No. 21-mc-048 (JEB/GMH), 2021 WL 7448016 (D.C. Cir. June 23, 2021) (magistrates report and recommendation granting CFTC's application for rule to show cause and to enforce subpoena), *adopting report and recommendation*, 2021 WL 748008 (D.C. Cir. July 26, 2021).

## III.    **RESPONDENTS**

**Glo-Bull Wealth LLC** is a Texas Limited Liability Company created in 2018. Samuel Decl. ¶ 13. In 2018, GBW listed its address with the Texas Secretary of State at 2026 Vanamen Ct., Conroe, Texas 77304-1601. *Id.* Texas Secretary of State records also list GBW's current address at 2026 Vanament Ct., Conroe, Texas 77304-1601, and its current status as "forfeited existence" due to a tax forfeiture as of February 28, 2020. *Id.* GBW has never been registered with the Commission in any capacity. *Id.* ¶ 14.

**Aric Colby Green** is an individual residing in League City, Texas. *Id.* ¶ 12. Green is GBW's owner and Chief Executive Officer ("CEO"). *Id.* ¶ 13. He also has been a manager of GBW and since the company's inception in 2018. *Id.* As an owner, CEO, and a manager of GBW, Green possessed direct information concerning the investigation during the relevant period. *Id.* ¶ 19; Folks Decl. ¶ 9. In addition, and on information and belief, Green has custody and control of the vast majority of GBW documents and has other relevant documents in his personal possession. Folks Decl. ¶¶ 9, 17, 27. Green has never been registered with the Commission in any capacity. Samuel Decl. ¶ 14.

## IV.    FACTUAL BACKGROUND

### A.  The Commission

As the independent federal regulatory agency charged by Congress with the administration and enforcement of the CEA and Regulation, the Commission's mission is "to promote the integrity, resilience, and vibrancy of the U.S. derivates markets through sound regulation."  COMMODITY FUTURES TRADING COMMISSION, *https://www.cftc.gov/About/AboutTheCommission* (last visited March 12, 2025).  The markets within the Commission's jurisdiction affect "a national public interest by providing a means for managing and assuming price risks, discovering prices, or disseminating pricing information through trading in liquid, fair and financially secure trading facilities."  7 U.S.C. § 5(a) .  These markets—with the U.S. futures markets estimated at $33 trillion and the swaps markets at $400 trillion— are "essential to our economy and the way the businesses and investors manage risk and uncertainties regarding future commodity price movements."  COMMODITY FUTURES TRADING COMMISSION STRATEGIC PLAN, FYs 2020-2024, at 4, *https://www.cftc.gov/media/3871/CFTC202024_2024StrategicPlan/download* (last visited March 12, 2025).

To achieve its mission, one of the Commission's strategic goals is "[p]rovide fairness, consistency, and predictability across enforcement matters," carried out by the Division. *Id.* at 8. The Division seeks to achieve this goal in part by "employ[ing] various investigative plans, analytics, and tools until sufficient evidence is obtained to determine whether or not a violation occurred within the jurisdiction of the Commission."  *Id.* at 26.  Primary among the Division's tools are requests for information to registrants pursuant to 7 U.S.C. § 6g, voluntary requests for

information and interviews of potential witnesses, and the nationwide issuance of subpoenas for documents and compelled testimony pursuant to 7 U.S.C. § 9(5)-(6). *See* Samuel Decl. ¶¶ 5- 6.

**B.  The Division's Investigation and Subpoenas**

In this case, the Commission, through the Division, initiated its non-public investigation into the activities of GBW and its officers, agents and employees (including Green) from its Washington, D.C. headquarters to discern whether GBW or any individual associated with it had violated or were violating the anti-fraud provisions of the Act or Regulations with respect to digital asset transactions.  Folks Decl. ¶¶ 3-4; Samuel Decl. ¶ 15.  A summary of the investigative steps taken by the Division to date that are pertinent to this Application are set forth in Mr. Samuel's Declaration.  Samuel Decl. ¶¶ 11-32.[7]

In furtherance of its investigative efforts, Division staff, among other things, interviewed witnesses and issued subpoenas pursuant to a Commission formal order authorizing the Division staff to do so,[8] including subpoenas for records to financial institutions and trading platforms (all returnable to the Commission's headquarters in Washington, D.C.).  *Id*. ¶¶ 9-18; Folks Decl. ¶¶ 4-8.  Based on the information gathered, and Green's roles as owner, CEO and manager of GBW, it was clear to Division staff that GBW and Green possessed direct and vital information

---

[7]    The Commission's investigation, through its Division of Enforcement, is non-public. *See* 7 U.S.C. § 12(a) and 17 C.F.R. §11.3 (providing that documents and information obtained by Commission staff in the course of an investigation shall be treated as non-public). *See also* Folks Decl. ¶ 7.  Accordingly, the Declarations submitted in support of the Application define the investigation in general terms.  Nonetheless, the Commission has met the relevance standard for the purposes of an administrative subpoena. *See First State Depository Co., LLC*, 2021 WL 7448016 at * 6 (D.C. Cir. June 23, 2021) (for relevance purposes, an agency "may define the investigation 'quite generally.'" (magistrate's report and recommendation granting CFTC application to enforce subpoena)), *adopting report and recommendation*, 2021 WL 748008 (D.C. Cir. July 26, 2021).

[8]    *See* Folks Decl. ¶ 4.  GBW was added to the formal order of investigation in October 2023. *Id*.

concerning the investigation. *See* Samuel Decl. ¶ 19; Folks Decl. ¶ 9.  Accordingly, acting pursuant to the Order, the Division issued the GBW Subpoena and the September 4 Subpoena for documents.  Samuel Decl. ¶¶ 19-25 and Exs.1 and 3 thereto; Folks Decl.  ¶¶ 10-14.   Having received no response from Green on behalf of GBW or himself personally, the Division issued the October 16 Subpoena to Green for documents and added a clause demanding that Green appear to testify.  Samuel Decl. ¶¶ 23, 27-28 and Ex. 5 thereto; Folks Decl. ¶ 15-21.

The  GBW Subpoena required GBW to produce relevant documents from the period of August 1, 2018, through the present relating to GBW's business, including: documents relating to GBW formation; GBW's operations, including: GBW's and/or any of its owners, directors, officers, or principals bank or financial account records and/or wallet information; documents pertaining to trading accounts held in GBW's name, or for the benefit of GBW, for cryptocurrency, digital assets, commodities, securities, metals, binary options, foreign exchange currency, futures, options on futures; documents concerning communications with GBW customers and potential customers; documents concerning advertising and promotional materials for GBW; and documents concerning websites for GBW.  *See* Samuel Decl. ¶ 21, and Ex. 1 thereto at pp. 8-12.

The September 4 Subpoena and the October 16 Subpoena similarly required Green to produce relevant documents from the period of August 1, 2018, through the present relating to GBW's business, including: documents relating to Mr. Green's ownership in GBW; contracts between GBW and Mr. Green; distribution of profits and payments made to Mr. Green from GBW; Mr. Green's involvement with GBW operations, including: documents pertaining to trading accounts held in GBW's and/or Mr. Green's name, or for the benefit of GBW, for cryptocurrency, digital assets, commodities, securities, metals, binary options, foreign exchange

currency, futures, options on futures; Mr. Green's bank account records and information; documents concerning communications with GBW customers and potential customers generally and those with which Mr. Green was involved; documents concerning Mr. Green's own investments and accounts relating to GBW; and documents relating to the fire that occurred at Mr. Green's house in June of 2023.  *See* Samuel Decl. ¶¶ 26, 32 and Ex.3 thereto at pp. 8-11, and Ex. 5 thereto at pp. 10-13.[9]

### C.  GBW's and Green's Failures to Comply with the Subpoenas

The GBW Subpoena established September 20, 2024, as the return date to produce responsive documents, and was served on officers of GBW, including Green, by Federal Express on September 4, 2024.  Samuel Decl. ¶¶ 20, 22 and Exs. 1 and 2 thereto.  The September 4 Subpoena to Green personally established September 26, 2024 as the return date to produce responsive documents, and was served on Green by Federal Express on September 5, 2024.  *Id*. ¶ 24-25 and Exs. 3 and 4 thereto.  A warning that "failure to comply with this subpoena may result in the commencement of a legal action in the United States District Court to compel compliance with the requirements hereof" appeared in bold face, capital letters type, on the front of both the GBW Subpoena and the September 4 Subpoena.  *Id.* ¶¶ 23, 27 and Exs. 1 and 3 thereto; Folks Decl. ¶ 15.  Green did not produce a single document or otherwise respond to either of GBW Subpoena or the September 4 Subpoena, either on behalf of GBW or in his personal capacity.  Samuel Decl. ¶¶ 23, 28; Folks Decl. ¶ 16.

When Green did not respond to either the GBW Subpoena or September 4 Subpoena, the Division issued the October 16 Subpoena and personally served it on Green by process service at

---

[9]    The requests for production in the September 4 Subpoena and the October 16 Subpoena were the same in every respect.  Samuel Decl. ¶ 32.

his residence in League City, Texas.  Samuel Decl. ¶¶ 28-30 and Exs. 5 and 6 thereto; Folks Decl. ¶ 18.  The October 16 Subpoena established October 31, 2024, as the return date to produce responsive documents.  Samuel Decl. ¶ 31; Folks Decl. ¶ 19.  The October 16 Subpoena also commanded Green to appear to provide testimony before officers of the Commission on November 7, 2024 at the Commission's headquarters in Washington, D.C.  Samuel Decl. ¶¶ 28, 30 and Ex. 5 thereto at p. 2; Folks Decl. ¶¶ 18, 20.  As with the GBW Subpoena and the September 4 Subpoena, a warning that "failure to comply with this subpoena may result in the commencement of a legal action in the United States District Court to compel compliance with the requirements hereof" appeared in bold face, capital letters type on the front of the October 16 Subpoena.  Folks Decl. ¶¶ 15, 21; *see* Samuel Decl. at Exs.1, 3 and 5 thereto.

On October 31, 2024, the Division received an email from Green – the Division's first and, to date, only communication from Green – in which he acknowledged service of "paperwork regarding GBW" and requested an extension of the due date of indeterminate duration.  Folks Decl. ¶ 22 and Ex. 2 thereto.  On November 1, 2024, a Division attorney responded to Green by email and agreed to a two-week extension of the October 16 Subpoena, setting the new due date for November 15, 2024.  *Id*. ¶ 23 and Ex. 3 thereto.  With respect to Green's testimony, the Division attorney offered the following:  "Provided that you make every effort to complete production by [November 15, 2024], we are willing to work with you to find a mutually convenient date and time to conduct testimony, and we are willing to arrange for your testimony to be conducted via video link rather than in person."  *Id*.

However, Green again failed to comply – producing not a single document by November 15.  *Id*. ¶ 24.   Nor did he provide the Division with any explanation for his non-compliance or otherwise communicate with the Division.  *Id*.  Thus, on November 20, 2024, a Division attorney

again emailed Green, pointing out his non-compliance, reminding him that his failure to comply

could result in the Division filing an action against him in federal district court to compel his

compliance, and offering him one more opportunity to comply with the Subpoenas, stating:

> We are willing to provide you with one more opportunity to
> comply with the subpoenas duces tecum.  You have until close of
> business on Wednesday, November 27, 2024, to produce all
> documents responsive to the subpoenas, in accordance with the
> methods outlined therein.  *****
>
> Should you choose not to comply with the above, you should be
> aware that we will take all legal recourse available to us to enforce
> the subpoena, which may include filing a subpoena enforcement
> action in federal district court in Washington, D.C.

*Id*. ¶ 25 and Ex. 4 thereto; *see also*, *id*. ¶ 25 and Ex. 5 thereto (follow-up email from a Division

attorney to Green, dated December 4, 2024, documenting Green's failure to produce by

November 27, 2024) and ¶ 28 and Ex. 6  thereto (final follow-up email from the same Division

attorney to Green, dated April 9, 2025, notifying him of the Commission's plan to file the instant

action, and "extending…a final opportunity to comply with the subpoenas" with a deadline of

April 15, 2025).  To date, Green has not produced a single document, has failed to appear for

testimony, and, other than the one email he sent on October 31, 2024 described above, has failed

entirely to communicate with the Division concerning the Subpoenas, notwithstanding the

Division's repeated attempts to accommodate him.  *Id.* ¶¶ 26, 28.

As noted *supra* n. 3, the Division also served the GBW Subpoena on another GBW

officer.  That individual has produced some GBW documents.  Folks Decl. ¶ 27.  On information

and belief, however, Green has sole custody and control of the vast majority of GBW documents,

including financial, trading and customer account records.  *Id*. ¶¶ 17, 27.

# V.    LEGAL AUTHORITY

## A. THE COURT HAS SUBJECT MATTER JURISDICTION

### 1.    Legal Background

As noted above, 7 U.S.C. § 9(8) permits the CFTC to seek the aid of a U.S. federal district court that – is "*within the jurisdiction in which the investigation or proceeding is conducted*" – to compel compliance with the terms of an administrative subpoena. In a series of opinions, the D.C. Circuit has provided guidance for interpreting the language "the jurisdiction in which the investigation or proceeding is conducted" found in 7 U.S.C. § 9(8). *See*, *e.g.*, *Fed. Election Comm'n v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849 (D.C. Cir. 1979); *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005); and *Nat'l Labor Rel. Bd. v. Cooper Tire & Rubber Co.*, 438 F.3d 1198 (D.C. Cir. 2006).[10]

The court in *La Rouche* considered whether the District of Columbia District Court had subject matter jurisdiction to enforce Federal Election Commission subpoenas issued during an investigation into potential violations of federal election laws, seeking the production of documents from five organizations at their New York offices. *La Rouche*, 613 F.2d at 851-52. Relying on an earlier court of appeals decision, *Fed. Trade Comm'n v. Browning*, 435 F.2d 96 (D.C. Cir. 1970), and various district court cases interpreting comparable provisions of the Federal Trade Commission Act, the *La Rouche* court set forth a two part inquiry, holding that in evaluating jurisdiction over a subpoena enforcement action, a court must consider: "(1) whether

---

[10]    These opinions are instructive in their interpretation of statutory language like that found in the Commodity Exchange Act. *See*, Ex. A, *Sullivan*, No. 15-mc-00032, Dkt. No. 8, at 2 n.1 ("Although the Court of Appeals' precedents regarding the proper location for enforcement of agency subpoenas involve different statutes, those statutes are similar to 7 U.S.C. § 9(8), and there is no reason why the logic of those decisions should not control here.").

the District of Columbia bore a sufficiently 'reasonable relation to the subject matter of the investigation' to qualify as a place where the inquiry was carried on, and (2) whether the agency's choice of this jurisdiction as its place of inquiry exceeded 'the bound of reasonableness.'" *Id.* at 856-57 (citation omitted); *see also ASAT*, 411 F.3d at 248 (citing the *La Rouche* test with approval); *Cooper Tire & Rubber Co.*, 438 F.3d at 1201 (same). On its facts, the *La Rouche* court determined that "[t]he nexus between this jurisdiction and the Commission's investigation lies in the fact that the District of Columbia, where the Commission maintains its headquarters, was the hub of the Commission's investigative activity." *La Rouche*, 613 F.2d at 857.

Building from this decision, the court in *ASAT*—asked to enforce a subpoena issued during an International Trade Commission patent infringement investigation—delineated a number of factors relevant to the reasonable relationship to the subject matter of the investigation in satisfaction of the first prong of the *La Rouche* inquiry:

> Among the factors relevant to this determination are: the place where the Commission held its hearing, the place where it made the decision to authorize the investigation, the place where the subpoenas were issued, the place where its correspondence emanated, the place where the Commission determined that unlawful actions had occurred, the location of the documents and witnesses, and the location of the headquarters of the subpoenaed company.

*ASAT*, 411 F.3d at 249. Weighing these factors, the court took note that, although the subpoenaed company and documents were in California, the "Commission's activities regarding the subpoena at issue were conducted overwhelmingly in the District of Columbia," and so the District of Columbia court had jurisdiction. *Id.* The court further noted that, as the respondent "demonstrated no actual hardship of defending itself in the District of Columbia," adjudicating subpoena enforcement there was "well-within the bound of reasonableness." *Id.* at 250.

14

Finally, *Cooper Tire* involved a National Labor Relations Board ("NLRB") investigation into whether activities at a Tupelo, Mississippi manufacturing plant violated a prior Fifth Circuit cease-and-desist order in connection with union solicitation and activities.  *Cooper Tire*, 438 F.3d at 1198-99.  In evaluating whether it had jurisdiction to enforce a subpoena from the NLRB's District of Columbia branch, the court reiterated the *La Rouche* test and the *ASAT* factors, but also noted that the analysis must not flow from a "simplistic tallying of factors;" rather "[t]he crucial question remains whether the jurisdiction bears a 'reasonable relation to the subject matter of the investigation.'"  *Id.* at 1201 (*quoting La Rouche*, 613 F.2d at 857).

Importantly, the *Cooper Tire* court distinguished those precedents enforcing subpoenas in District of Columbia courts even where the subject matter of the investigation was located outside of the district as involving "nationwide" investigations:

> [E]very one of these cases involved an investigation that encompassed multiple jurisdictions and could be characterized as nationwide in scope. ***When an investigation is nationwide in scope, its subject matter is not located in any particular place, and the location of the investigating office may well be the most reasonable choice for purposes of subpoena enforcement.***

*Id.* at 1202 (emphasis added);[11] s*ee also* Order, *In re: U.S. Commodity Futures Trading Comm'n v. Conley,* No. 16-mc-02158, Dkt. No. 9, at 4 (D.D.C. February 6, 2017) (Sullivan, J.), a copy of

---

[11]    For example, the court explained that the subpoena in *La Rouche* flowed from an investigation into possible improprieties of a national political party in a national political campaign, involving donations from multiple states.  *Id.*  Even though many of the activities under investigation occurred in New York, it reasoned, the investigation was nationwide in scope, and so the District of Columbia had jurisdiction over subpoena enforcement as the hub of that investigation.  *Id.* at 1202-03.  By contrast, the court found that the investigation in *Cooper Tire* was not nationwide in scope as the "investigation concerns a single employer and a single dispute related to union-organizing activity at a single plant.  The subject matter of this inquiry *is* located in a particular place, and that place is Tupelo, Mississippi."  *Id.* at 1202.  Concluding that "the place of inquiry does not include the District of Columbia," the court ordered dismissal for lack of jurisdiction.  *Id.* at 1204.  However, faced with criticism from the dissent that the court's focus on a nationwide investigation ran counter to the plain meaning of the statute and

which is attached at Ex. B ("when an agency is conducting a nationwide investigation and the District of Columbia is the 'hub' of that investigation, a District Court in the District of Columbia has subject matter jurisdiction and venue is proper in that court.")

### 2. The Commission Issued the Subpoena to Respondents Pursuant to a Nationwide Investigation with Its Hub at Its Headquarters in the District of Columbia

The Division is conducting a nationwide investigation into GBW and its officers, agents and employees (including Green) from the Commission's headquarters located in the District of Columbia. *See*, e.g., Samuel Decl. ¶¶ 7-32. Thus, the District of Columbia necessarily bears "a sufficiently reasonable relation to the subject matter of the investigation to qualify as a place where the inquiry [is] carried on," in satisfaction of the first *La Rouche* prong. *La Rouche*, 613 F.2d at 856-57 (citations omitted).

Like in *ASAT*, "the Commission's activities" regarding the Subpoena at issue here "were conducted overwhelmingly in the District of Columbia." *ASAT*, 411 F.3d at 249. The attorneys and staff conducting the investigation in this case are in the District of Columbia, as are the investigative files. Samuel Decl. ¶¶ 1, 5-10; Folks Decl. ¶¶ 1, 3-6, 8. The Commission's Order of investigation, all the Subpoenas and related correspondence emanated from, and were issued from returnable to, Commission headquarters in the District of Columbia. Samuel Decl. ¶¶ 9, 16-20, 24-25, 28, 31; Folks Decl. ¶¶ 3-6, 8, 22-25. "Because . . . the Commission conducted the administrative activities essential to the investigation in the District of Columbia, the district

---

represented a departure from precedent, *id.* at 1204-08 (Griffith, J., dissenting), the court clarified the limits of its holding, stating that jurisdiction "do[es] not . . . always require[] a national investigation; enforcement in the District, as anywhere else, depends on an application of the factors listed in *La Rouche* and *ASAT*, and a national investigation merely works to tip the scale in favor of the District." *Id.* at 1204.

court here ha[s] subject matter jurisdiction" under the Act. *ASAT*, 411 F.3d at 249 (citations omitted).

Moreover, the subject matter of the investigation is necessarily nationwide in scope as it involves individuals who invested with GBW located throughout the United States. *See* Samuel Decl. ¶¶ 15-17. Indeed, Division staff interviewed numerous GBW customers located in at least four states from its Washington, D.C. headquarters office and anticipates that its investigation will continue on a nationwide basis. *See* Samuel Decl. ¶ 18. Also, from its headquarters, Division staff have issued subpoenas, which are returnable to Washington, D.C., to various financial and other entities located in multiple states. *Id*. ¶¶ 16, 18.

The case *Cooper Tire*—which appears to be the sole instance of a District of Columbia court denying jurisdiction to an agency subpoena enforcement action—is readily distinguishable from the instant matter. In that case, unlike here, the NLRB's inquiry focused on the localized labor-related activities occurring at a single manufacturing plant in Tupelo, Mississippi. *Cooper Tire & Rubber Co.*, 438 F.3d at 1198-99. Moreover, that case stemmed from alleged violations of an existing cease-and-desist order previously issued by a court in another jurisdiction, namely the Fifth Circuit. *Id.* at 1202. Facing these facts, the court found that the NLRB's mandate was no broader than the particularized events at issue. *Id.* at 1204. By contrast, the CFTC's mandate is to protect the integrity, resilience, and vibrancy of the U.S. derivatives markets through sound regulation. COMMODITY FUTURES TRADING COMMISSION, *https://www.cftc.gov/About/ AboutTheCommission* (last visited March 12, 2025). Any activity in these markets, including Green's apparent fraudulent activity, necessarily affects market participants, like the investors described here, located across the United States. "As such, given the broad nature of the [CFTC's] concern in this case, this would appear to qualify as a nationwide inquiry within the

meaning of" the relevant precedents. *La Rouche*, 613 F.2d at 856 (quoting *United States v. Firestone Tire & Rubber Co.*, 455 F. Supp. 1072 at 1077 (D.D.C. 1978)).

Further, the Commission is aware of no case decided in the eighteen years since *Cooper Tire* that followed its holding to deny jurisdiction in the District of Columbia to an agency seeking enforcement of a subpoena; rather, courts continue to enforce such subpoenas even after *Cooper Tire. See, e.g.*, *Commodity Futures Trading Comm'n v. Ekasala*, 62 F. Supp. 3d 88, 92 (D.D.C. 2014) (enforcing a CFTC subpoena issued to a Florida-based owner of a Florida company); *CFTC v. McGraw Hill Cos., Inc.*, 507 F. Supp. 2d 45 (D.D.C. 2007) (enforcing, in part, a CFTC subpoena issued to a New York-based corporation); Ex A, *Sullivan,* No. 15-mc-00032, Dkt. No. 8, at 2 (enforcing a CFTC subpoena issued to a California-based owner and California company); Ex. B, *Conley,* No. 16-mc-02158, Dkt. No. 9, at 4 (enforcing a CFTC subpoena issued to a Florida-based resident);[12] *F.T.C. v. Church & Dwight Co.*, 747 F. Supp. 2d 3 (D.D.C. 2010) (enforcing administrative subpoena against Canadian subsidiary), *aff'd*, 665 F.3d 1312 (D.C. Cir. 2011); *U.S. v. Inst. for Coll. Access & Success*, 27 F. Supp. 3d 106 (D.D.C. 2014) (petition to enforce administrative subpoena granted); *U.S. v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121 (D.D.C. 2012) (petition to enforce administrative subpoena granted); *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 898 F. Supp. 2d 171 (D.D.C. 2012) (petition for enforcement of administrative subpoena *duces tecum* granted); *see also Anomnachi v. Soc. Sec. Admin., Off.*

---

[12]     The facts in *Conley* are quite similar to the ones here.  There the Court noted that the District of Columbia was the "hub" of the Commission's nationwide investigation because, among other things: (1) the investigation was put into motion after the Commission received complaints from persons in locales all across the United States; (2) the Commission had telephonically spoken to potential witnesses in various states; (3) the Commission had issued subpoenas to persons in various states; and (4) the Commission uncovered that there were interstate financial transactions.  Ex. B, *Conley,* No. 16-mc-02158, Dkt. No. 9, at 5-6; *see* Samuel Decl. ¶¶ 15-18.

*of Inspector Gen.*, 290 F. Supp. 3d 30 (D.D.C. 2017) (motion to quash administrative subpoena issued by Social Security Administration's Office of the Inspector General as part of fraud investigation of bank account denied); and *Nicsolat v. U.S. Dept. of Transp.*, 227 F. Supp. 3d 122 (D.D.C. 2017) (motion to quash administrative subpoena denied).  This is not surprising as "administrative activities [pertaining to agency subpoenas] may occur in the District of Columbia in most, if not all, Commission inquiries and therefore the district court for the District of Columbia often, if not always, would have subject matter jurisdiction."  *ASAT*, 411 F.3d at 250.

For these reasons, the District of Columbia is "the jurisdiction in which the investigation . . . is conducted," 7 U.S.C. § 9(8), and this Court has jurisdiction over the instant action.

### 3.    The Commission Reasonably Chose to File Its Application in the District of Columbia

Considering the Commission's location, headquartered in the District of Columbia, and the necessarily nationwide scope of its investigations, the Commission's choice of this jurisdiction as the place of its inquiry and for the enforcement of its Subpoena was well within "the bound of reasonableness" as required by the second *La Rouche* prong.  *La Rouche*, 613 F.2d at 857.  *La Rouche* made clear that "the bound of reasonableness is broad indeed" and "an agency should be given **substantial** leeway in selecting its place of inquiry for subpoena enforcement purposes."[13]  *Id.* at 855 (emphasis added).  Here, as the Subpoenas issued to Green were issued from and made returnable to the Commission's headquarters in Washington, D.C.,

---

[13]    This is especially the case as the Commission has no regional office in Texas.  *See*, Ex. B, *Conley*, No. 16-mc-02158, Dkt. No. 9, at 6 ("Given that the Commission is conducting an essentially nationwide investigation from its national office in the District of Columbia it is afforded broad discretion in selecting this jurisdiction as its place of inquiry, and thus it cannot be said that the Commission exceeded the bound of reasonableness in bringing this enforcement action in the District of Columbia.  That is especially the case because the Commission is headquartered in the District of Columbia and has no regional office in Florida [where respondent resides]." (citations omitted)).

Green could reasonably believe that he would be subject to the jurisdiction of the federal court in the District of Columbia.  Further, as Green has not and indeed cannot "demonstrate [] actual hardship of defending [him]self in the District of Columbia, . . . it is not difficult to conclude that the Commission's choice of the District of Columbia to enforce the subpoenas is well-within the 'bound of reasonableness.'"  *ASAT*, 411 F.3d at 250 (quoting *La Rouche*, 613 F.2d at 857); *see also Ekasala*, 62 F. Supp. 3d at 96 (finding no hardship in enforcing a subpoena against a Florida-based respondent in the District of Columbia).

### B.  THIS COURT HAS PERSONAL JURISDICTION OVER GREEN AND GBW

Under Federal Rule of Civil Procedure 4(k)(1)(C), "[s]erving a summons . . . establishes personal jurisdiction over a defendant when authorized by federal statute."  Fed. R. Civ. P. 4(k)(1)(C).  In a subpoena enforcement action, personal jurisdiction is typically established by serving an order to show cause in accordance with Fed. R. Civ. P. 4.  *See*, *e.g.*, *In re Application to Enforce Administrative Subpoena Duces Tecum of SEC v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996) (describing order to show cause as an instrument that established personal jurisdiction); *United States v. Hiramanek*, No. 17-cv-03389-BLF, 2017 WL 3605232, at *2 (N.D. Cal. Aug. 22, 2017) ("the Court acquires personal jurisdiction over Respondent upon proper service of the petition and OSC together").

By providing that "the Commission may invoke the aid of any court of the United States within the jurisdiction in which the investigation or proceeding is conducted," 7 U.S.C. § 9(8) thus "establishes where . . . personal jurisdiction [is] proper."  *See*, Ex. A, *Sullivan,* No. 15-mc-00032, Dkt. No. 8, at 2; *see also*, Ex. B, *Conley,* No. 16-mc-02158, Dkt. No. 9, at 7 (holding that the language of 7 U.S.C. § 9(8) "must be interpreted as a special grant of jurisdiction" and thus authorizes the court "to obtain jurisdiction of the person [ ] of the defendant [ ] through service upon [him] of its process in whatever district [he] may be found.'" (citation to quotation

omitted)); *ASAT*, 411 F.3d at 252 (interpreting similar statutory language to provide nationwide

service of process and thus personal jurisdiction); *La Rouche*, 613 F.2d at 860 ("It is

inconceivable to us that Congress would have vested the Commission with such broad powers of

compulsory process, while intending that they not have extraterritorial effect.").  In turn, 7

U.S.C. § 9(9) authorizes nationwide (and worldwide) service of process in connection with

subpoena enforcement actions.  Because the Commission properly served the Subpoenas in

connection with its investigation being conducted in the District of Columbia, this Court will

obtain personal jurisdiction over Respondents once they are served with any order to show cause

issued by the Court.  *See*, Ex. B, *Conley*, No. 16-mc-02158, Dkt. No. 9, at 7 (holding that

personal jurisdiction was proper because Conley "was served with Commission's subpoena and

subsequently served with this Court's order directing him to show cause").

### C.  VENUE IN THIS COURT IS PROPER

7 U.S.C. § 9(8) likewise provides for venue in this District.  Although questions of

subject matter jurisdiction and proper venue are typically distinct, under the controlling statutory

language "the two inquiries merge."  *ASAT*, 411 F.3d at 248.  For the same reasons that it was

within the "bounds of reasonableness" to initiate this action in the District of Columbia, so too

venue is proper here.  *Id.* ("Because the second [*LaRouche*] criterion resembles a traditional

venue analysis that focuses on the convenience of the forum to the parties, . . . [it] implicates

whether that court is a proper venue." (citations omitted)).

### VI.    THE COURT SHOULD GRANT THIS APPLICATION AND ISSUE AN ORDER FOR GREEN AND GBW TO SHOW CAUSE

Administrative agencies like the Commission "wield broad power to gather information

through the issuance of subpoenas," *Resolution Trust Corp. v. Grant Thornton*, 41 F.3d 1539,

1544 (D.C. Cir. 1994), and "[a]n administrative subpoena must be enforced if the information

sought 'is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.'"  *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (quoting *U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)); *accord Resolution Trust Corp. v. Frates*, 61 F.3d 962, 964 (D.C. Cir. 1995); *CFTC v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014); *U.S. v. Capitol Supply, Inc.*, 27 F. Supp. 3d 91, 99 (D.D.C. 2014).  Here, the Commission's investigation is within its jurisdiction, and its administrative process and the Subpoena complies with this Circuit's standard for enforcement.

### A.  THE SUBPOENA IS WITHIN THE COMMISSION'S BROAD INVESTIGATIVE AUTHORITY

The Commission, like other federal agencies, has far-reaching investigatory authority permitting it to "investigate merely on suspicion that the law is being violated, or even just because [the agency] wants assurance that it is not."  *Morton Salt*, 338 U.S. at 642–43; *see also Walde*, 18 F.3d at 947 (following *Morton Salt*).  The Commission's authority is especially broad at the pre-complaint stage, where it "is under no obligation to propound a narrowly focused theory of a possible future case."  *Ekasala*, 62 F. Supp. 3d at 93 (quoting *Federal Trade Comm. v. Texaco*, 555 F.2d 862, 872 (D.C. Cir. 1977)).

An essential component of this investigatory power is the Commission's ability to issue and serve subpoenas.  *See* 7 U.S.C. § 12(a)(1) ("For the efficient execution of the provisions of this Act . . . the Commission may make such investigations as it deems necessary to ascertain the facts regarding the operations . . . [of] persons subject to the provisions of this Act.") *and* 7 U.S.C. § 9(5) ("[A]ny . . . officer designated by the Commission . . . may . . . subpoena witnesses, compel their attendance, take evidence, and require the production of any . . . records that the Commission deems relevant or material to the inquiry"); *see also CFTC v. Harker*, 615 F. Supp. 420, 424 (D.D.C. 1985) ("[T]he Act grants the Commission the authority to subpoena witnesses and to seek judicial enforcement of such subpoenas." (citing 7 U.S.C. § [9])).

Having followed proper administrative procedure, "[t]he CFTC must be given substantial leeway to investigate" so that it may assess whether parties have "complied with or run afoul of the [Act] or CFTC Regulations," *Collins v. CFTC*, 737 F. Supp. 1467, 1485 (N.D. Ill. 1990), and "enforcement of [its] investigatory subpoena will be denied only when there is 'a patent lack of jurisdiction' in an agency to regulate or to investigate." *Fed. Trade Comm'n. v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001), *cert. denied*, 537 U.S. 820 (2002) (*quoting Civil Aeronautics Bd. v. Deutsche Lufthansa Aktiengesellschaft*, 591 F.2d 951, 952 (D.C. Cir. 1979)); *see also Texaco*, 555 F.2d at 872 ("T]he scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important government interest in the expeditious investigation of possible unlawful activity."); *Capitol Supply*, 27 F. Supp. 3d at 99 (citing *Texaco*).

The Subpoenas to Green and GBW—properly issued pursuant to a formal order of investigation—plainly fall within the scope of the Commission's authority to investigate potential violations of the Act and Regulations. *See* 7 U.S.C. §§ 9, 12(a)(1). The Subpoenas seek documents and information relating to GBW's and Green's funds and/or digital assets purportedly used to trade digital assets on behalf of the customers and possible misappropriation of those funds. Samuel Decl. ¶¶ 21, 26. This type of conduct falls squarely within the Commission's regulatory authority. *See,* e.g., 7 U.S.C. §§ 6b(a), 9(1), 17 C.F.R. § 180.1 (2025); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y 2018) (finding in connection with CFTC fraud action that "[v]irtual currencies can be regulated by CFTC as a commodity . . . . They fall within the common definition of 'commodity' as well as the [CEA's] definition of 'commodities' as 'all other goods and articles . . . in which [futures contracts] are presently or in the future dealt in.'"), *recons. denied*, 332 F. Supp. 3d 641, 650-51 (E.D.N.Y. 2018); *CFTC v.*

*My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 495-98 (D. Mass. 2018) (same); *CFTC v. Tinoco*, No. EP-21-CV-00237-DCG, 2022 WL 1670031 at *4 (W.D. Tex. Mar. 25, 2022) (consent order in CFTC fraud action stating "Digital assets such as Bitcoin are encompassed in the definition of 'commodity' under Section 1a(9) of the [CEA]."). Documents and testimony responsive to the Subpoenas would assist the Commission with determining whether there are or have been violations of these provisions.

### B.  THE SUBPOENAS SEEK SPECIFIC, RELEVANT INFORMATION

The standard for determining the relevance of records and testimony requested by an administrative subpoena "'is more relaxed than in an adjudicatory one . . . . The requested material, therefore, need only be relevant to the investigation—the boundary of which may be defined quite generally . . . .'" *Walde*, 18 F.3d at 947 (*quoting Fed. Trade Comm'n. v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 910 (1993)); *accord Ekasala*, 62 F. Supp. 3d at 93. In making a relevancy determination, a court must accept a federal "agency's own appraisal of relevancy . . . so long as it is not 'obviously wrong.'" *Invention Submission*, 965 F.2d at 1089 (quoting *Fed. Trade Comm'n. v. Carter*, 636 F.2d 781, 787–88 (D.C. Cir. 1980)); *accord Ekasala*, 62 F. Supp. 3d at 93. In the event of a challenge to a subpoena, "the party resisting an administrative subpoena bears the burden of showing that the information sought is irrelevant." *Frates*, 61 F.3d at 964.

Here, Green has provided the Division no basis for his refusal to comply with the Subpoenas, either on his own behalf or on behalf of GBW. Further, he has not contested that he has relevant documents or information. In fact, in his one limited response to Division staff, Green requested additional time "so that I can get you everything you asked for." Folks Decl. at Ex. 2 thereto. In any event, a belated claim of irrelevancy would certainly fail. The Subpoenas seek information that is clearly relevant to the Commission's investigation into potential fraud by

Green and GBW.  Thus, for example, documents concerning GBW's and Green's trading accounts, statements, or practices, Samuel Decl. ¶ 21 and Ex. 1 thereto (Demand Nos. 1-4) and Samuel Decl. ¶ 26 and Ex. 3 thereto (Demand Nos. 8-10), will allow the Commission to evaluate the scope and nature of relevant trading involved.  Documents evidencing a complete list of GBW's and Green's customers will aid the Commission in identifying the full scope of his and the entity's business as well as aid the Commission in developing an approximate amount of money that was collected and returned to customers.  *Id.* at Ex. 1 (Demand Nos. 23-24) and Ex. 3 (Demand Nos. 6, 13, 18)).  Documents concerning Green's communications with customers and prospective customers of GBW, *id.* at Ex. 1 (Demand Nos. 8, 21, 24) and Ex. 3 (Demand Nos. 7, 14-15, 18), will provide leads as to who else invested with Green and GBW.  Similarly, documents concerning GBW's trading accounts, *id.* at Ex. 1 (Demand Nos. 10-20) and Ex. 3 (Demand Nos. 8-10, 18), will shed light on not only who may have provided funds for investment to GBW or Green but also whether Green misappropriated customer funds.  Further, testimony from Green on these and other related topics will be instrumental to the Commission's understanding of the nature, scope, and extent of the relevant activities, and to further aid in its investigation.  Measured, as they must be, "'only against the general purposes of [the] investigation,'" such requests and demand for testimony indisputably are "reasonably" relevant to the Commission's investigation.  *Ekasala*, 62 F. Supp. 3d at 93 (quoting *Texaco*, 555 F.2d at 874) (finding requests for "corporate formation documents, promotional materials, information regarding former officers and employees, and bank account statements" to "plausibly contain information relevant to the investigation").

Finally, the Subpoenas are narrowly focused, limited in time, and impose minimal burdens on Green and GBW.  The Subpoenas provides dates, definitions, instructions and

specific requests for documents, limited to the period of August 1, 2018, through the present. Samuel Decl. ¶¶ 21, 26, 31 and Exs. 1, 3 and 5 thereto.  Such requests are reasonable and should be enforced.  *See Ekasala*, 62 F. Supp. 3d at 93 (enforcing a subpoena with similarly definite requests); *see also Texaco*, 555 F.2d at 882 ("We emphasize that the question is whether the demand is unduly burdensome or unreasonably broad.  Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest.").  To the extent Green or GBW attempts for the first time in response to this application to argue burden, this Court should deny such argument on the grounds that Green "has not been responsive or particularly communicative with the CFTC regarding compliance . . . [and] he never made an attempt to comply with them in the first instance."  *See Ekasala*, 62 F. Supp. 3d at 95.

## <u>CONCLUSION</u>

The Court has subject matter jurisdiction over the instant action and personal jurisdiction over Green and GBW, and venue in this Court is proper.  Further, the Subpoenas, and the documents and information that they seek, are well within the Commission's authority, and they are sufficiently definite and seek reasonably relevant information.  Therefore, the Court should issue an order requiring GBW and Green to show cause why they should not be compelled to comply fully with the Subpoenas.  Further, should GBW and/or Green not show good cause, then the Court should issue a subsequent order: (1) requiring GBW and Green to comply immediately in all respects with the Subpoenas, including (a) that they produce all books, papers, documents and other tangible things specified in Schedule A to the Subpoenas to the Commission that are in

their possession, custody and/or control, and (b) that Green personally appear before the

Commission at its office in Washington, D.C., to provide testimony; and (2) providing any other

relief the Court deems appropriate for GBW and/or Green's failure to show good cause.

Dated:  April 24, 2025                    Respectfully submitted,

                                          COMMODITY FUTURES TRADING
                                          COMMISSION

                                          Attorneys for Applicant,

                                   By:    _____

                                          Kathleen M. Banar (DC Bar No. 90025403,
                                          admitted to DCDC by government certification)
                                          *kbanar@cftc.gov*
                                          Kelly M. Folks (VA Bar No. 72124, admitted to
                                          DCDC by government certification)
                                          *kfolks@cftc.gov*
                                          COMMODITY FUTURES TRADING COMMISSION
                                          Three Lafayette Centre
                                          1155 21st Street NW
                                          Washington, D.C. 20581
                                          Tel: (202) 418-5377